CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 06 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JUSTIN D. THOMAS & IRENE S. THOMAS, | ) ) ) | Case No.: 7:12-cv-00413-JCT |
| Plaintiffs, | ) ) | **MEMORANDUM OPINION** |
| v. | ) ) ) ) | By: James C. Turk Senior United States District Judge |
| CARMEUSE LIME & STONE, INC., | ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on the motion of Plaintiffs Justin D. Thomas & Irene S. Thomas for a temporary restraining order ("TRO") and preliminary injunction against Defendant Carmeuse Lime & Stone, Inc. ("Carmeuse") (Dkt. No. 2). Defendant filed a response in opposition to the TRO (Dkt. No. 7), and the Court held a hearing on September 4, 2012, at which both parties were represented by counsel. The matter is now ripe for decision. For the reasons set forth below, Plaintiffs' Motion for Temporary Restraining Order is **DENIED.** As to Plaintiffs' request for a Preliminary Injunction, that request is taken under advisement. The parties may request a subsequent hearing on that relief if they desire, at which time the legal issues underlying the claims in this case may be more fully explored.[1]

---

[1] Plaintiffs served copies of the notice on counsel for Carmeuse, Carmeuse filed a response in opposition to the TRO prior to the hearing, including a sworn declaration, and Carmeuse's counsel appeared via telephone and presented arguments at the hearing. Thus, the Court concludes that Carmeuse had adequate notice such that the Court could rule on the request for preliminary injunction, as well. See Fed. R. Civ. P. 65; U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 283-84 (discussing notice requirements and when it is appropriate to convert a TRO into a preliminary injunction and citing Ciena Corp. v. Jarrard, 203 F.3d 312, 319 (4th Cir. 2000) for the proposition that "a district court could properly consider a motion for a TRO as a request for a preliminary injunction, based on the fluidity of the relationship between TROs and preliminary injunctions, focusing not on a specific time period but on whether the opposing party had a fair opportunity to oppose it"). Nonetheless, the Court declines to do so.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, who are residents of Ohio, own certain real property consisting of between 150 and 190 acres in Buchanan, Virginia ("the Thomas Property"),[2] which includes an old stone house ("the Stone House"). According to the affidavit of Plaintiffs' expert, the Stone House "is an excellent, and rare, example of 18th century colonial American architecture." (Dkt. No. 4, Decl. of Daniel B. Thorp at ¶ 3.) It is "rare" in the sense that colonial settlers did not frequently build stone houses. (Id. at ¶ 3-4.) No one currently resides in the Stone House, and it apparently has not been occupied (and perhaps has been uninhabitable) for some time.[3]

Defendant Carmeuse is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. It owns and operates a limestone mining plant that is adjacent to Plaintiffs' property. Although the Complaint identifies a dispute as to the extent of Carmeuse's ownership of mineral rights on the Thomas Property, it is apparently undisputed that Carmeuse owns at least some of the mineral rights on the Thomas Property, and that it has an easement to conduct mining operations on at least a portion of the Thomas Property.

In their Verified Complaint, Plaintiffs allege that the Stone House has sustained damage from Carmeuse's blasting on nearby property, although the only evidence as to what caused the damage is Mr. Thomas' declaration stating that he believes the blasting caused the damage. The Verified Complaint also contains an extensive discussion of the history of conveyances both for the Thomas Property and for the subsurface mineral estate owned by Carmeuse. In particular, the Complaint focuses on an 1849 indenture deed that severed the mineral rights from the estate

---

[2] Plaintiffs' counsel explained that the tax records indicate the Thomas Property consists of approximately 190 acres, while at least one survey has calculated its area as closer to 150 acres.

[3] The parties disagree about the current condition of the Stone House and perhaps about Plaintiffs' intentions as to its preservation. Those disputes are not germane to the Court's resolution of the request for injunctive relief, however, and the Court does not discuss them further.

of the Plaintiffs' predecessor-in-interest, Reynolds, and conveyed them to Carmeuse's predecessor-in-interest, Wilson. The 1849 deed also conveyed an easement over the Thomas Property for mining purposes, but the easement contained an important exception. The exception did not allow the owner of the mineral estate, or its successors, "to blast, or quarry, or take away, any stone within the enclosure of the yard attached to the said Reynolds' present dwelling house." (Compl. at Ex. B, Translation at 3.) The prohibition states that it is being "inserted to protect the family of the said Reynolds, and of his heirs or assigns, or other persons who may be in the occupancy of the house from annoyance." (Id.) Plaintiffs contend that "the yard" is a substantial area around the House and that Carmeuse is prohibited from engaging in activities (especially modern-day methods of quarrying) that might come within "the yard."

The Complaint also alleges that the mineral estate owned by Wilson was later sub-divided and that subsequent grants of the mineral or limestone rights granted less than the full amount initially granted in the 1849 deed. Based on this, Plaintiffs contend that Carmeuse appears to own only a portion of the limestone on the Thomas Property (basically a portion south of the Stone House) and that Carmeuse has no right to quarry or even be present on the other portions of the Thomas Property. (Dkt. No. 1, Compl. at ¶¶ 12-21.)

As Plaintiffs summarize,

> Carmeuse . . . appears to be operating under the mistaken premise that it either owns all of the limestone on the Thomas Property or that it has an easement to the entire surface of the Thomas Property even though it only owns limited areas of limestone within the Property. Carmeuse also seemingly fails to appreciate that the 1849 deed did not contemplate the manner of quarrying that Carmeuse currently employs. Given the wide swath of surface that is destroyed pursuant to Carmeuse's current mining techniques exhibited on the property neighboring the Thomas Property, the entirety of the Thomas Property would be consumed, in direct contradiction to the plain terms of the deed, the intent of the parties at the time of the deed, and contrary to what the law in Virginia requires.

(Dkt. No. 1, Compl. at ¶ 26.) The Complaint thus seeks a preliminary injunction, a permanent

3

injunction, and a declaratory judgment setting forth the limitations expressed in the Complaint as to Carmeuse's mineral rights and easement.

In their Motion for a TRO, Plaintiffs request injunctive relief prohibiting Carmeuse from: (1) "disturbing the old stone house and the yard adjoining the house, as well as the stone beneath these areas"; (2) "disturbing, altering, or destroying the spring that supplies the old stone house with water"; and (3) "exceeding the scope of the easement giving it access to the limited area of its limestone estate along half the vein of grey limestone, and associated mining rights." (Dkt. No. 2 at 1-2.) At the hearing, however, counsel requested even more limited relief, requesting that the TRO simply prohibit Carmeuse from disturbing or damaging the Stone House or the spring. The Court addresses herein only the request as limited by counsel.[4]

## II. STANDARDS FOR GRANTING INJUNCTIVE RELIEF

As the Supreme Court explained in Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008), a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." The same standard applies to a TRO, which is different from a preliminary injunction only in that it can be entered without notice and must be of limited duration. See U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006). In order to establish that he is entitled to relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20; see also Dewhurst v. Century Aluminum Co., 649 F.3d 287 (4th Cir. 2011) (discussing and applying Winter standard).

---

[4] Accordingly, additional issues raised by the Complaint, but not implicated by the narrowed scope of the TRO request, include: (1) the extent of Carmeuse's mineral ownership rights and corresponding scope of any easement, (2) whether the 1849 deed is in Carmeuse's chain of title and binding on Carmeuse and if so, (3) what portion of the Thomas Property constituted the "yard" in 1849, and (4) whether the restriction in the 1849 is applicable if there are no occupants or residents in the Stone House.

4

Applying this standard to the case at bar, the Court concludes that Plaintiffs have failed to establish that they are entitled to a TRO.

## III. DISCUSSION

As noted, Plaintiffs limited their request at the hearing to an order enjoining Carmeuse from damaging the Stone House or the spring that supplies water to it. As to this more limited relief, the Court will assume only for purposes of this order that Plaintiffs are likely to succeed on the merits of any claim that Carmeuse is not entitled to disturb or damage the house or any spring on the property. Indeed, even Carmeuse appeared to acknowledge at the hearing that it must take reasonable care not to cause any damage to the house or the spring. (See also Dkt. No. 7, at 9 ("Core drilling will damage neither the House nor the spring, and . . . no further mining activities are imminent.").)

Nonetheless, even under this assumption, Plaintiffs are not entitled to injunctive relief preventing such damages because they have not even come close to demonstrating that Carmeuse's current or imminent operations are likely to cause harm to the Stone House or spring. The only evidence before the Court of Carmeuse's imminent operations is that it will be engaged in "test drilling" or "core drilling." Such drilling uses a three-inch diameter drill and drilling equipment that is smaller than a water well drilling rig. By its nature, this type of drilling does not cause any damage to structures or underground springs. (Dkt. No. 7, Ex. 6, Decl. of Clay Coleman, at ¶ 4-8.) Additionally, the four test holes that will be dug on the Thomas Property are on a ridge and not near the spring. (Id. at ¶ 6.) Additionally, as to the spring, Carmeuse's undisputed practice in the event that core drilling strikes water is to "stop immediately and drill elsewhere." (Id.) Finally, according to counsel's statements at the hearing,

5

the four proposed drill sites are approximately 100 to 110 yards from the Stone House,[5] in an area of the property where Carmeuse apparently has undisputed mining rights. Thus, they are sufficiently removed from the Stone House such that neither the drilling nor the building of roads to get in equipment for the drilling should disturb the Stone House. In short, the undisputed declaration of Mr. Coleman clearly indicates that the core drilling that is to take place is an extremely limited procedure and should not result in any damage to either the Stone House or any spring, both because of the nature and procedures employed in test drilling and because of the location of the four drilling spots. Thus, Plaintiffs have not demonstrated that Carmeuse's imminent operations in the form of test drilling are likely to cause damage to the Stone House or its spring.

Damage, including possible trespass if Carmeuse does not own an easement to the entirety of the Thomas Property surface, may well occur from future blasting or quarrying on any portion of the Thomas Property, but Carmeuse has flatly stated that such activities on the Thomas Property are likely to occur, if ever, only years down the road. (Dkt. No. 7, Ex. 6, Decl. of Clay Coleman, at ¶ 9. ("Any actual quarrying or blasting activity is not anticipated for at least four years.").) At that point, hopefully the legal issues raised in this lawsuit (and particularly the extent of Carmeuse's mining rights and the extent of any restrictions of its rights in the vicinity of the Stone House or the "yard" as expressed in the 1849 Deed) will have been resolved. But in the meantime, the core drilling occurring over the next few weeks does not present such a likelihood of "imminent risk" to the Stone House or the spring so as to warrant injunctive relief.

In support of its contention that harm to the Stone House is likely or imminent, Plaintiffs rely heavily on a June 27, 2012 letter from Carmeuse's counsel, Mr. Lawson, to Mr. Thomas,

---

[5] Plaintiffs estimated the distance at 100 to 100 yards; Defendants' counsel indicated that the drilling sites were at least 150 yards from the Stone House.

6

which includes the statement that Carmeuse "has the right to mine limestone on the [Thomas Property]" and that, "[g]iven the nature of limestone mining which is conducted in an open quarry type operation, those rights include the mining company's right to destroy and disturb the surface to allow the company to extract the limestone." (Dkt. No. 1, Compl. at Ex. G, at 1.) Either Plaintiffs or Plaintiffs' counsel interpret this statement as a threat to destroy the Stone House. As an initial matter, Carmeuse's counsel flatly denied that Carmeuse had any intention of destroying the Stone House or disturbing the spring that exists (or may exist) on the property. More importantly, even if Carmeuse believes it has the right to destroy the Stone House as part of a quarry-type operation, which is in dispute, no quarrying is imminent. Indeed, as noted, undisputed evidence shows that any quarrying on the Thomas property will not occur for years.

Plaintiffs' counsel further indicated that Plaintiffs are concerned about a "rogue" heavy-equipment operator that fails to take adequate precautions to prevent damage to the Stone House or the spring. But the Supreme Court made clear in Winter that "a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." This is so because if a mere possibility of irreparable harm were sufficient, it would conflict with the characterization of injunctive relief 'as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 375-76 (citation omitted). Rather, a plaintiff must show a likelihood of imminent harm. Because Plaintiffs have not made this showing, they are not entitled to a TRO.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' Motion for a Temporary Restraining Order and takes under advisement Plaintiffs' Motion for a Preliminary Injunction. Should the parties wish to engage in additional briefing on the request for preliminary injunction, or to hold a hearing on the same, they should so advise the Court.

7

The Clerk of the Court is directed to send a copy of this memorandum opinion and accompanying order to all counsel of record.

**ENTER**: This 6th day of September 2012.

*/s/ James C. Turk*
Honorable James C. Turk
Senior United States District Judge