CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 17 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JUSTIN D. THOMAS & IRENE S. THOMAS, | ) ) ) | Case No.: 7:12-cv-00413-JCT |
| Plaintiffs, | ) ) | MEMORANDUM OPINION |
| v. | ) ) ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| CARMEUSE LIME & STONE, INC., and O-N MINERALS (CHEMSTONE) COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. ECF No. 33. Plaintiffs filed a response, ECF No. 34, and Defendants filed a Reply, ECF No. 35. The Court heard argument on the motion on November 29, 2012, and the matter is now ripe for decision. For the reasons set forth below, Defendants' Motion to Dismiss the Amended Complaint, ECF No. 33, is **DENIED**. Additionally, with the agreement of Plaintiffs' counsel as expressed at the hearing, Plaintiffs' request for a Preliminary Injunction, previously taken under advisement, is **DISMISSED WITHOUT PREJUDICE AS MOOT**.[1] To the extent that arguments set forth in Defendant Carmeuse's Motion to Dismiss the original Complaint, ECF No. 19, and the related briefing remain germane after the filing of the Amended Complaint, those arguments are addressed herein.[2] The Motion to Dismiss the Original

---

[1] As explained by Plaintiffs' counsel, the Amended Complaint removes any request for injunctive relief; thus, under the Amended Complaint, Plaintiffs no longer seek a preliminary injunction.

[2] Specifically, the original Motion to Dismiss (filed only by Carmeuse) set forth three arguments. First, Carmeuse argued that Counts One and Two failed to state a substantive claim for relief because they only requested injunctive relief. Second, it contended that the Complaint was subject to dismissal because

Complaint, ECF No. 19, is otherwise **DENIED AS MOOT**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

As set forth in the Court's prior Order in this case, the Plaintiffs Justin D. Thomas & Irene S. Thomas, residents of Ohio, own certain real property consisting of approximately 190 acres in Buchanan, Virginia ("the Property"), in Botetourt County, identified by county records as plot 43-22 on the Tax Map. The Property includes an old stone house ("the Stone House"), which is fed by a nearby natural spring, and numerous outbuildings or foundations from outbuildings. ECF No. 25, Amended Complaint (hereinafter "Am. Compl.") ¶ 9. According to the affidavit of Plaintiffs' proffered expert, the Stone House "is an excellent, and rare, example of 18th century colonial American architecture." ECF No. 4, Decl. of Daniel B. Thorp ¶ 3. It is "rare" in the sense that colonial settlers did not frequently build stone houses. Id. ¶¶ 3-4. No one currently resides in the Stone House, and it apparently has not been occupied for some time.

Defendant Carmeuse Lime & Stone is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. It owns and operates a limestone mining plant that is adjacent to Plaintiffs' property. Defendant O-N Minerals (Chemstone) Company is a wholly-owned subsidiary of Carmeuse and holds title to at least a portion of the stone of the Property.[3]

---

Plaintiffs failed to name O-N (Chemstone) Minerals Company as a defendant and that O-N was an indispensible party. Third and finally, Carmeuse sought dismissal on the grounds that Plaintiffs allege in the Complaint that Carmeuse's rights are restricted by an 1849 Deed, but that Deed only places restrictions on mining if the Stone House is occupied, and Plaintiffs have not alleged that the Stone House is occupied. The first two of these three arguments were mooted by the filing of Plaintiffs' Amended Complaint, which removed the separate counts seeking injunctive relief and also added O-N Minerals as a party. The final argument in the original motion to dismiss is not mooted by the filing of the Amended Complaint and is addressed herein.

[3] Although it recognizes that only O-N Minerals (and not Carmeuse) actually owns the mineral rights on the Property, the Court refers to the Defendants collectively herein.

2

The dispute between the parties concerns the extent of Defendants' rights to mine limestone on the Property. For purposes of this Motion to Dismiss, the Court will accept as true the well-pleaded allegations of the Amended Complaint, filed October 19, 2012. ECF No. 25. In their Amended Complaint, the Plaintiffs allege that an "indenture deed" executed in 1849 ("the 1849 Deed") is the beginning of Defendants' chain of title. That deed severed the limestone on the Property, creating a separate estate in the stone.[4] It then conveyed ownership of that stone estate to John S. Wilson, and also sold 127 acres of adjacent land in fee simple. Am. Compl. ¶¶ 11-12, 20.

Plaintiffs contend that the 1849 Deed placed a number of restrictions on the conveyance of limestone, however, by reserving important rights to the Plaintiffs' predecessor-in-interest, G. Reynolds. In particular, as discussed in more detail herein, Plaintiffs allege that the Deed prohibits any quarrying activities in the area of the Stone House and yard, and further contend that the scope of the yard must be measured by what would have been included in the Reynolds' yard in 1849, which would have included a natural spring on the property near the house, and "numerous outbuildings." Id. ¶ 12.

After Wilson's death, a Commissioner was appointed to administer his estate, and the Commissioner executed certain deeds in 1901 and 1902 with respect to both fee interests in Wilson's land and stone rights. Am. Compl. ¶¶ 13-16. According to Plaintiffs, these deeds conveyed only a portion of Wilson's limestone rights in the Property. Thus, Plaintiffs' Complaint alleges that Defendants succeeded only to a portion of the limestone in the Property, which further limits their easement over the Property. Id.

The Amended Complaint then asserts that, in 1924, the individuals who had been deeded,

---

[4] See Bostic v. Bostic, 99 S.E.2d 591, 594 (Va. 1957) (explaining that an owner may convey the underlying minerals and except from the operation of the conveyance the surface of the land, which severs the mineral estate from the surface estate and creates two separate estates).

3

via the 1901 and 1902 deeds, land and limestone rights previously owned by Wilson conveyed all their property interests under those deeds to the Wilson Lime Company, which held them until 1992. Id. ¶ 17. According to Plaintiffs, in 1992, the Wilson Lime Company conveyed a portion of its property owned in fee simple to James River Limestone Company, and conveyed a portion of the limestone within the Property, and without reference to any prior deed. Id. ¶¶ 18-20. This is the interest later conveyed to O-N Minerals.

In their Amended Complaint, Plaintiffs seek declaratory relief in the form of the following declarations:

> a. the defendants do not own any limestone or incidental mining/quarrying rights beneath the old stone house and its yard (and the extent and scope of the area around the house subject to such limitation),
>
> b. the defendants have no right to blast, quarry, or take away any stone within the area surrounding the old stone house,
>
> c. the defendants have no right to disturb, damage, or destroy the old stone house and/or the yard adjoining the house,
>
> d. the defendants have no right to destroy, damage, or otherwise interfere with the natural spring, the water source of the old stone house;
>
> e. the defendants own only the limestone (and corresponding easement rights) in a discrete and specified portion of the Property being half of the grey vein of limestone which runs in a southwesterly direction across the southwestern quarter of the Thomas Property,
>
> f. the defendant's easement to access these limited limestone holdings is confined to the same area and the defendants have no right to any use or burden to the surface over which they do not own the corresponding limestone rights, and
>
> g. a declaration defining the methods that Carmeuse may or may not use to access the limited amounts of limestone it owns pursuant to the language and meaning of the 1849 deed.

ECF No. 25, Am. Compl. at 11-12.

## B. Procedural Background

At the same time Plaintiffs filed their original Complaint, they also filed a motion for Temporary Restraining Order and Preliminary Injunction, requesting that the Court prohibit core drilling by Carmeuse on the Property. In particular, Plaintiffs were concerned that this test drilling, which was to be conducted in early August, might cause damages to the Stone House or the spring. Based in part on representations made to it in an affidavit by a Carmeuse employee and representations by Defendants' counsel at the TRO hearing, the Court found that Plaintiffs had failed to establish an entitlement to an injunction.[5]

There appears to be substantial disagreement between the parties as to the extent of Defendants' limestone rights and Defendants also appear to disagree with Plaintiffs' description as to what deeds are in Defendants' chain of title to the mineral rights, what types of tenancies certain of those deeds created, and what the language of certain of those deeds mean. Nonetheless, for purposes of ruling on their motion to dismiss, Defendants agree that the allegations of the Complaint must be accepted as true. This Court thus assumes, for purposes of ruling on the motion to dismiss, that Defendants' chain of title is properly set forth in the Amended Complaint.[6]

---

[5] In papers subsequently filed with the Court (although not sworn under oath), Plaintiffs assert that the core drilling by Carmeuse in fact damaged the spring on the Property. See, e.g., ECF No. 28 at 2-4. They further assert that Carmeuse struck water while engaged in core drilling and nonetheless continued drilling. ECF No. 28 at 3. If this is accurate, it is directly contrary to the prior sworn representations to the Court by Carmeuse's employee, Clay Coleman, who testified that Carmeuse's practice if core drilling were to strike water would be to "stop immediately and drill elsewhere." ECF No. 8, Coleman Decl. ¶ 6. As of this date, Plaintiffs have not filed a claim seeking money damages as a result of the alleged damage to the spring.

[6] The Court's resolution of the issues raised by the motion to dismiss is complicated by what appears to be an attempt by Defendants to avoid asking the Court to consider materials outside the pleadings and to avoid converting their motion to dismiss into a motion for summary judgment. For example, Defendants make references to their own title search, see ECF No. 35 at 3 n. 2, and do not even admit that the 1849 Deed is in their chain of title. See id. at 2 n.1 (noting that Plaintiffs allege Wilson is Carmeuse's predecessor-in-interest to the mineral rights); see also ECF No. 19 at 5 (summarizing their argument about the Reynolds Deed and stating that "even if it applies to the Property, [it] does not place

5

Defendants offer several arguments in support of their Motion to Dismiss, which the Court addresses in turn, after first examining the basis for its jurisdiction.

**C. Jurisdiction of Court**

Although Defendants have not sought dismissal of the Amended Complaint for lack of subject matter jurisdiction, this Court nonetheless has a duty to assure itself of its own jurisdiction. See Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012). Plaintiffs invoke this Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332, which requires that the parties be citizens of different States and that the "matter in controversy exceed[s] the sum or value of $75,000, exclusive of interests and costs." It appears undisputed that the parties are citizens of different states. For the reasons discussed below, the Court further concludes that the amount-in-controversy requirement is met here.

The Amended Complaint does not contain an explicit claim for money damages; rather, the relief sought is declaratory in nature.[7] "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). That value is ascertained "by the larger of two figures: the injunction's [or declaratory judgment's] worth to the plaintiff or its cost to the defendant." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 639

---

restrictions on Carmeuse's quarrying") (emphasis added). They have not provided any documents, however, to show their chain of title. Accordingly, the Court is left with essentially an incomplete record to evaluate the respective property rights of the parties.
    In any event, the Court is not being asked to grant the declaratory relief sought at this stage, and the Court recognizes that additional documents may eventually be produced that lead to different conclusions concerning a final determination of the respective property rights of the parties. The Court's inquiry at this point is limited to the usual determination on a Rule 12(b)(6) motion to dismiss, whether the Complaint fails to state a claim for relief. Here, as discussed herein, Plaintiffs have alleged sufficient facts to state a plausible claim for relief.

    [7] The Amended Complaint also contains a general prayer for relief requesting, in essence, all other relief to which Plaintiffs might be entitled.

(4th Cir. 2010) (citing Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002)). Here, the Amended Complaint alleges that amount in controversy exceeds $75,000. Am. Compl. ¶ 5. The Court may also consider evidence outside the Complaint to determine whether jurisdiction exists. See United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 358 (4th Cir. 2009). The case involves a dispute over the possible damage to—or destruction of—a home built in the 18th century and deemed by Plaintiffs' expert to be a historic and rare structure. See ECF No. 4, Thorp. Aff., ¶¶ 3-5. Additionally, the Amended Complaint alleges that Plaintiffs' property totals approximately 190 acres, and public property tax records for Botetourt County assess the value of the land owned by the Thomases at more than $200,000. See www.botetourtbillpay.com (property tax records searchable by name (last visited Dec. 12, 2012)). In light of the fact that Defendants have taken the position that they are entitled to destroy the surface of the Property, if need be, to exercise their rights with regard to the limestone they own, the potential cost to Plaintiffs is at least the value of half of the land.[8] Thus, the Court finds that the amount-in-controversy requirement is satisfied.

## II. ANALYSIS

### A. Standards Governing Motion to Dismiss

To survive a motion to dismiss, the plaintiffs' allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). This "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). In this case, the

---

[8] The Court's conclusion is also consistent with defense counsel's statement, when explaining the potential burden to Defendants of an injunction prohibiting core drilling, that Carmeuse's contract with a third party, just for the core drilling, was worth approximately $75,000. ECF No. 23, Tr. of 9/4/12 Hearing at 22-23.

Amended Complaint refers to and incorporates by reference a number of deeds, which the Court also considers here.[9] Although this Court accepts the well-pleaded facts in the complaint as true, see Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), where there is a "conflict between the bare allegations of the complaint" and any attached exhibit, "the exhibit prevails." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Accordingly, this Court credits the allegations of Plaintiffs' Amended Complaint as true, but only insofar as those allegations do not conflict with the deeds attached thereto. See id.

### B. Does the 1849 Deed Require Occupancy For the Restriction on Quarrying "within the yard" to apply? If So, Do Plaintiffs Fail to State a Claim for Relief Because They Do Not Allege The House Is Occupied?

Defendants' first argument, as incorporated from Carmeuse's original Motion to Dismiss, is that Plaintiffs have failed to state a claim for relief because Plaintiffs seek to restrict Defendants' mining rights under the 1849 Deed, which Defendants contend only restricts the limestone owner's rights if the Stone House is occupied. Because the Complaint does not allege that the Stone House is currently occupied,[10] Defendants maintain that the 1849 Deed does not restrict their mining activities. Thus, they contend that Plaintiffs' Amended Complaint, to the extent it relies on the 1849 Deed, does not state a claim for relief. For the reasons explained herein, the Court rejects this argument.

As noted, the Amended Complaint avers that the 1849 Deed severed the mineral rights from the estate of the Plaintiffs' predecessor-in-interest, Reynolds, and conveyed them to O-N's

---

[9] Doing so does not convert the motion to dismiss into one for summary judgment. See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 176 (4th Cir. 2009).

[10] It is not disputed that the Stone House has been unoccupied for some time. Defendants also rely on zoning records showing that the Property is not even currently zoned for residential living and cite to out-of-circuit authority for the proposition that a "federal court in considering a motion to dismiss may take judicial notice of county zoning ordinances." ECF No. 30 at 4 n.2. Because the zoning of the house does not affect the Court's conclusions herein, it does not take into account any zoning restrictions.

predecessor-in-interest, Wilson. In pertinent part, the 1849 Deed provided that, pursuant to the parties' agreement,

> Reynolds did . . . sell to the said Wilson, under certain qualifications, and subject to certain privileges therein expressed, all the stone and rock upon every portion of his own land . . . , together with certain rights of way over his the said Reynolds' own land: This indenture therefore witnesseth that the said Reynolds and his wife, for the several considerations before mentioned as moving them to this conveyance, have also given, granted, bargained and sold, and do hereby give, grant, bargain, sell and convey, to the said Wilson and his heirs and assigns forever, all the stone or rock of every kind, and particularly all limestone, or quarries of limestone, or other kind of stone, in and upon any and every portion of the said Reynolds' own land which was owned by him at the date of said agreement, with the privilege to the said Wilson, his heirs or assigns, of free ingress, egress, and regress, at all times, to enter and quarry, and take the same away, or to construct kilns and burn the same into lime, on the said Reynolds' own land . . . . And this is to be a perpetual privilege.

Am. Compl., Ex. A at 272-73 of Deed Book 31.

Immediately following the foregoing conveyance, however, the 1849 Deed provides that the conveyance of the stone included a number of restrictions. Id. at 273 ("This portion of the contract and conveyance, is subject however to the following limitations or qualifications . . .") For example, it reserved to Reynolds, during the term of his own life, the ability to burn a certain amount of lime every year, and reserved for Reynolds, and for his heirs or assigns, the right to "take and make use of any stone upon his own land . . .that may be suitable and needful for building purposes on his own land." Id. It also requires payment to Reynolds, his heirs and assigns, for any damage to the crops on the land resulting from burning or taking away any of the stone. See id.

The conveyance of the easement also contained the following restriction, the meaning of which is disputed by the parties here:

> And it is also agreed and understood between the parties that the

9

> said Wilson, his heirs or assigns, is not to blast, or quarry, or take away, any stone within the enclosure of the yard attached to the said Reynolds' present dwelling house; <u>**this provision is inserted to protect the family of the said Reynolds, and of his heirs or assigns, or other persons who may be in the occupancy of the house from annoyance.**</u>

Am. Compl., Ex. A at 3 (emphasis added) (hereinafter the "Yard Restriction").[11] In their Complaint, Plaintiffs contend that "the yard" is a substantial area around the House and that Defendants are prohibited from engaging in any mining activities (especially modern-day methods of quarrying) that might come within "the yard."[12] Relying on the emphasized portion of the Yard Restriction, Defendants argue that the restrictions on mining activities "within the enclosure of the yard" are only limited if the house is occupied. Because Plaintiffs have not alleged in the Complaint that the House is occupied, Defendants contend that "the [1849] Deed, even if it applies to the Property, does not place restrictions on Carmeuse's quarrying." Thus, Defendants contend that the Complaint fails to state a cause of action and must be dismissed.

The Court is not persuaded by Defendants' argument. A plain reading of the language of the Deed places a restriction on all blasting, quarrying or taking away of stone within the enclosure of the yard. By its own terms, the emphasized language explains <u>why</u> that restriction is inserted, but the restriction on activities within the enclosure of the yard is not conditioned upon occupancy, explicitly or implicitly. Indeed, Defendants do not point to any language in the 1849

---

[11] The Court utilizes herein the uncertified "translation" provided by the Plaintiffs, but notes that it appears to the Court to differ at least slightly from the original deed. For example, while the handwritten 1849 Deed is somewhat difficult to read, it appears to the Court that the word "enclosure" in the translation is actually spelled "inclosure" and that the phrase "this provision is" actually reads "this provision being." In any event, for purposes of this motion, the Court will treat the translation offered as correct.

[12] The parties also disagree about the amount of land that would have constituted "the yard" in 1849. Compare, e.g., Am. Compl. ¶ 12 (alleging that the "yard" would have included the spring and numerous outbuildings); ECF No. 4, Thorp Aff. ¶ 9 (yard would have included "as little as 5 and potentially more than 10 acres") with ECF No. 7 at 8, Def.'s Opp. to Mot. for TRO (Defendants' assertion that the terminology "yard attached to the . . . house" is more limited than Plaintiffs suggest).

10

Deed that indicates the reservation of rights is premised on the house being occupied and only applies as long as the house is occupied. That is, the Yard Restriction does not state that it is applicable only so long as the house is occupied, or only if the house is occupied, or that the restriction expires if the house is not occupied.[13]

Indeed, it is even plausible that the language concerning "occupancy" of the house modifies only "other persons" and does not even apply to the families of Reynolds or his heirs or assigns. That is, the provision could be referred to as protecting from annoyance three groups: (1) the family of Reynolds; (2) the family of Reynolds' heirs or assigns; and (3) other persons who may be in the occupancy of the house. Under such an interpretation, the final sentence as applicable to Plaintiffs, would be read as "this provision is inserted to protect the famil[ies] . . . of [Reynolds's] heirs and assigns . . . from annoyance." Under this reading, too, occupancy would be irrelevant.

Moreover, under Defendants' proffered interpretation, the rights of the owner of the mineral estate would vary depending on whether the owners of the surface estate were living in the house at any given point or not, which would seem to produce anomalous results and lead to uncertainty as to the rights of both parties. Suppose, for example, that no one resided in the house for a year or two, but then the owners of the surface estate returned to the home. Under Defendants' interpretation, the owners of the mineral estate would have the ability to mine, without restriction, even in the enclosure of the yard, and even to the extent of destroying the home, so long as there were no residents. But they then would be prohibited from doing so upon the surface owners' return to their home. It seems to the Court highly unlikely that either Reynolds or Wilson could have intended such an interpretation at the time the Deed was

---

[13] The Court's conclusion in this regard renders it unnecessary to address the parties' alternative arguments in the event that occupancy is required, including their arguments concerning the applicability of the Rule Against Perpetuities.

11

recorded.

Accordingly, the Court concludes that Defendants' legal right to mine the Property (which, as alleged in the Complaint, flows from the 1849 Deed) is subject to the Yard Restriction, regardless of the occupancy of the House. Thus, the Complaint states a viable claim for relief in that it seeks a declaration of the respective rights of the parties with regard to that restriction. Accordingly, to the extent Defendants' motion to dismiss seeks dismissal on this ground, it is DENIED.

### C. What Portion of Stone Rights in the Property Do the 1901, 1902, and 1992 Deeds Convey to Defendants' Predecessors?

Defendants' remaining arguments focus on three subsequent deeds (a 1901, 1902 and 1992 Deed) that Plaintiffs allege are in Defendants' chain of title. Specifically, the Amended Complaint alleges that, subsequent to the Reynolds Deed that severed the mineral rights and conveyed them to Wilson, there were two deeds executed by a Commission on behalf of the estate of John S. Wilson, a successor-in-interest to the owner of the mineral rights, the 1901 and 1902 Deeds. The 1901 Deed conveys, from Wilson to Defendants' predecessors:

> [A]ll of the limestone on the land of the late G.B.W. Reynolds, now in name of Lavinia Pitzer [the Property], adjoining the above lands, and along the vein of grey limestone, on said Reynolds lands extending in a South-Westerly direction, to a line three hundred feet from the line of the E. Dillon land . . . .

Am. Compl. ¶ 14, and Exhibit C. Similarly, the 1902 Deed states that it "also conveys all the stone on the land of Lavinia Pitzer [the Property], from line of "parcel no. 2, "(which parcel has heretofore been conveyed by said commissioner . . . by [the 1901 Deed]) thence South West to E. Dillon's line . . ." Am. Compl. ¶ 16, Exhibit D.

The 1992 Deed, in turn conveys ". . . half the veins of limestone on a 200 acre tract of land belonging to [Thomases' predecessor], and adjoining [a 306 acre tract also conveyed]; said

12

half to be measured along the veins of limestone from the division line of said 306 acre tract in a southwesterly direction." Am. Compl. ¶ 18 and Ex. E at 3.

The parties dispute the proper interpretation and significance of these three deeds. Plaintiffs claim that the 1901 Deed "granted only a particular grey vein of limestone that extends in the lower half of the property in a southwesterly line" and that "[n]o limestone above (northeast of) this grey vein of limestone was even conveyed." Am. Compl. ¶ 21. The 1902 Deed, according to Plaintiffs, merely completed the conveyance of the remainder of the limestone on that grey vein. Based on this, Plaintiffs claim that, at most, the Defendants have stone rights only as to that portion of the Property. They further contend that the 1992 Deed conveyed only a portion (half) of that conveyed in the 1902 and 1902 Deeds.[14]

Defendants counter that both the 1901 and 1902 Deeds, by their plain terms, convey the entire mineral estate conveyed by the 1849 Deed. As to the 1992 Deed, Defendants argue that to the extent that the 1992 Deed conveyed less than all of the mineral rights in the Property, it created a co-tenancy in the mineral estate. Under this scenario, Defendants assert that they are at the very least a co-tenant in the entire estate and that as a co-tenant, they have access to the entire mineral estate. From this, Defendants argue that Plaintiffs lack standing to bring any claim challenging Defendants' right to access the limestone and argue that only a co-tenant would have standing to pursue such a claim.

---

[14] The question of how much of the stone Defendants own on the Property is a significant one. This is so because if Plaintiffs' interpretation of the Deeds is correct, and Defendants only own the limestone rights on a portion of the Property, then Defendants "hold no incidental mining easement to and through the property where it does not own the corresponding limestone." Am. Compl. ¶ 22. Put differently, Defendants have "no right to interfere with any part of the surface of the Property in which [they do] not also own the limestone." Id.; see also Clayborn v. Camilla Red Ash Coal Co., Inc., 105 S.E. 117, 122-23 (Va. 1920) (owner of coal in Property A owns no right to use tunnels or mines under surface of Property A once all coal is gone, and thus each time it moves coal through those tunnels from an adjoining piece of land where it also owns coal rights, the owner of the coal trespasses on the rights of the owners in fee simple of Property A).

13

Plaintiffs disagree that the 1992 Deed created a co-tenancy, but even if it did, Plaintiffs argue that they nonetheless have standing to assert their claims in this lawsuit.

In addressing these competing claims, the Court reaches the general conclusion that, upon a careful review of the language of the 1901, 1902, and 1992 Deeds, Plaintiffs have, at the very least, asserted an interpretation of those deeds that could "plausibly" limit Defendants' mineral rights on the Property. Accordingly, dismissal would be inappropriate.

First of all, the Court is not convinced that the 1901 and 1902 Deeds are as clear and plain as Defendants contend. But in any event, even if those two deeds conveyed the entirety of the limestone rights to the Property, the subsequent 1992 Deed plainly only conveys half the veins of limestone. Indeed, Defendants do not argue in their motion to dismiss that the 1992 Deed conveyed the entire interest in the limestone on the Property. See generally ECF No. 33 at 6-7. Thus, crediting the chain of title allegations in the Complaint, at most Defendants succeeded only to half of the limestone rights on the Property.[15]

Second, the Court need not resolve, at this stage, whether the 1992 Deed was so indefinite in designating the property conveyed that it created a tenancy in common, rather than a severed estate. See ECF No. 33 at 6 (Defendants so arguing, and citing Hodges & De Jarnette v. Thornton, 120 S.E. 865, 866-68 (Va. 1924) for the proposition that a "tenancy in common is created if a 'definite designation of the several parts of the land' cannot 'be located on the ground by following such designation'"). Instead, the Court determines that even if the Deed created a co-tenancy, that does not lead to the conclusion Defendants want, which is that Plaintiffs lack standing to stop the mining because they are not a co-tenant and own no rights to the stone. ECF No. 33.

---

[15] Defendants contend that they actually own the entirety, but they have not produced any deeds or evidence showing a conveyance of the remaining half not conveyed by the 1992 Deed.

Standing merely requires an injury in fact—an invasion of a legally protected interest . . . Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs clearly have a protectable interest in their estate and in ensuring that it is burdened only by those easements that are legally enforceable. Indeed, as Plaintiffs note, it is entirely appropriate for a court to declare the respective rights of a surface owner and mineral owner when such a dispute arises. See, e.g., Ross Coal Co. v. Cole, 249 F.2d 600 (4th Cir. 1957) (affirming district court's declaration of respective rights between the surface owner and owner of a coal estate); see also Clayborn v. Camilla Red Ash Coal Co., 105 S.E. 117 (Va. 1920) (resolving claim brought by owner of surface estate challenging extent of easement rights by coal owner). Like the parties in the cited cases, Plaintiffs and Defendants here are owners of different estates in a common parcel of real estate, and they state a colorable and plausible claim that Defendants are improperly interfering with their property rights. The Motion to Dismiss on the grounds of lack of standing must be denied.

In short, the Court concludes that dismissal at this stage of Plaintiffs' remaining claims would be inappropriate since Plaintiffs have stated a claim that is "plausible on its face." See Iqbal, 556 U.S. at 678. Accordingly, for all of the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 33, is **DENIED**.[16]

---

[16] In addition to these issues concerning physical areas where Defendants may be restricted from mining (because of the Yard Restriction or because they lack of ownership over the entirety of the mineral estate corresponding with the Property), Plaintiffs' Amended Complaint also challenges the manner in which Defendants are mining or intend to mine the limestone they own. Specifically, Plaintiffs allege that the manner of mining is limited to the methods contemplated by Reynolds at the time that he conveyed the mineral rights in 1849, and that those methods are significantly more limited than the methods employed today. See ECF No. 4 ¶¶ 10-12 (affidavit of Plaintiffs' proffered expert, Dr. Thorp explaining what "quarrying" and "blasting" meant at time of 1849 Deed). In response, Defendants argue that the wording of the 1849 Deed placed no restrictions on the method or manner in which the limestone was to be mined, and in fact expressly refers to "blast[ing]." ECF No. 30 at 8; Am. Compl., Ex. A at 3. Defendants further point to the fact that Virginia courts have noted that the only way to extract limestone is from the surface. ECF No. 30 at 8 (citing Beury v. Shelton, 144 S.E. 629, 633 (Va. 1928)).

## III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss the Complaint. ECF No. 33. Additionally, with the agreement of Plaintiffs' counsel as expressed at the hearing, Plaintiffs' request for a Preliminary Injunction, see ECF No. 2, previously taken under advisement, is **DISMISSED WITHOUT PREJUDICE AS MOOT**. Finally, to the extent that arguments set forth in Defendant Carmeuse's Motion to Dismiss the original Complaint ECF, No. 19, and the related briefing remain germane after the filing of the Amended Complaint, and have been incorporated by the parties in their briefing on the subsequent Motion to Dismiss, those arguments have been addressed as part of the ruling on the second motion to dismiss. Accordingly, Carmeuse's first Motion to Dismiss the Original Complaint, ECF No. 19, is **DENIED AS MOOT**.

ENTER: This 17th day of December, 2012.

Honorable James C. Turk
Senior United States District Judge

---

There appear to be competing legal principles as to this issue. Compare, e.g., Yukon Pocahontas Coal Co. v. Ratliff, 24 S.E.2d 559, 563-64 (Va. 1943) (a miner's rights are "not limited . . . to such appliances as were in existence when the grant was made, but may keep pace with the progress of society and modern inventions") and Beury, 144 S.E. at 633 (recognizing, in 1928, that only way limestone can be removed is by "quarrying, which requires the taking off of any top soil that may lie above it and blast it off. There is nothing left when the limestone is taken.") with Traylor v. Holloway, 142 S.E.2d 521, 523 (Va. 1965) (citing the "elementary rule of construction that the purpose or intent of a written instrument must be determined from the language used in the light of the circumstances under which it was written") and Lowe v. Guyan Eagle Coals, Inc., 273 S.E.2d 91, 93 (W. Va. 1980) (in discussing possible limitations on an easement, holding that "no use may be made of a right-of-way, different from that established at the time of its creation so as to burden the servient estate to a greater extent than was contemplated at the time of the grant."). Given that the Court has determined that Plaintiffs have stated a plausible claim and survive a motion to dismiss, the Court need not resolve this issue at this time.